**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEC **1 3** 2021

**U. S. DISTRICT COURT**
**EASTERN DISTRICT OF MO**
**ST. LOUIS**

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
v.                              )   **4:21CR694 MTS**
                                )
ROBERT WILLIAMS,                )
                                )
        Defendant.             )

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

#### 1. PARTIES:

The parties are the defendant Robert Williams, represented by defense counsel Joel Schwartz, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

#### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I-VII, the United States agrees that no further federal prosecution will be brought in this District relative to the events described in the information, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts I-VII, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to all assets identified in the Forfeiture Allegation of the charging instrument.

## 3. ELEMENTS:

As to Counts I-VII, the defendant admits to knowingly violating Title 18, United States Code, Section 1344, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant knowingly executed a scheme to obtain any of the moneys under the custody and control of a financial institution by means of materially false or fraudulent representations;

**Two**, the defendant did so with intent to defraud; and

**Three**, the financial institution was insured by the Federal Deposit Insurance Corporation.

2

## 4. **FACTS**:

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136,134 Stat. 281 (2020), is a federal law that was enacted in or around March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic. One source of relief provided for in the CARES Act is the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program. The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees.

To obtain a PPP loan, a qualifying business is required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application requires the business to acknowledge the program rules and make certain affirmative certifications to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) is required to certify: (a) that the small business was in operation on February 15, 2020; (b) the average monthly payroll expenses; and (c) the number of employees. These certifications are used to calculate the amount of money the small business is eligible to

3

receive under the PPP. In addition, businesses applying for PPP loans are required to submit documentation supporting their payroll expenses.

Midwest Regional Bank and PNC Bank are financial institutions within the meaning of Title 18, United States Code, Section 20, because they were financial institutions insured by the Federal Deposit Insurance Corporation.

Articles of Organization were filed with the Missouri Secretary of State for 2543 N. Grand, LLC on September 17, 2013. An individual besides defendant Williams is listed as the sole organizer of the LLC. Included with the PPP loan application are documents which show defendant Williams' sister, Wilma Williams, originally filed Articles of Organization with the Missouri Secretary of State for A Fresh Start Emergency Network 1 LLC on September 14, 2007 and these have been modified three times, the most recent in April 30, 2018. An individual besides defendant Williams is listed as the sole organizer of the LLC. Articles of Organization were filed with the Missouri Secretary of State for Afshari Enterprise, LLC on July 28, 2020. Defendant's son Robert Williams is listed as the sole organizer of the LLC.

Defendant Williams filed Articles of Organization with the Missouri Secretary of State for Club TV One, LLC on April 13, 2008. Defendant Williams is listed as one of three organizers of the LLC. Included with the PPP loan application are documents which show defendant Williams' sister, Wilma Williams, filed Articles of Organization with the Missouri Secretary of State for Emergency Funding, LLC on October 17, 2013. A Fresh Start, LLC and Emergency Network 1 LLC are listed as the organizers of the LLC. Defendant Williams filed Articles of Organization with the Missouri Secretary of State for International Product Groups, LLC on April 6, 2013. Defendant Williams is listed as the sole organizer.

4

Articles of Organization were filed with the Missouri Secretary of State for Julia's Enterprize, LLC on July 29, 2020. Julia Booker is listed as the sole organizer of the LLC. Defendant Williams filed New Articles of Organization with the Missouri Secretary of State for Snappy's International Holdings, LLC on December 29, 2017. Defendant Williams is listed as the sole organizer of the LLC, along with defendant Williams' International Products Group. Defendant Williams filed New Articles of Organization with the Missouri Secretary of State converting Crossroads Building Management to Tasty Brands Enterprize, LLC on February 6, 2017. Defendant Williams is listed as one of two organizers of the LLC. Defendant Williams filed Articles of Organization with the Missouri Secretary of State for Commercial Capital Finance, LLC on March 14, 2013. Included with the PPP loan application are documents which show defendant Williams and A Fresh Start Emergency Agency, LLC, are listed as the organizers of the LLC.

In or about April 2020, in St. Louis, in the Eastern District of Missouri, the defendant, devised and intended to devise a scheme and artifice to defraud and to obtain moneys, funds, credits, assets, securities and other property owned by, or under the custody and control of Midwest Regional Bank and PNC bank, federally insured financial institutions, by means of false and fraudulent pretenses, representations, and promises. Defendant Williams applied for a PPP loan at Midwest Regional Bank with the intent to obtain loan proceeds. It was further part of the scheme to defraud that the Defendant submitted one PPP loan application for Commercial Capital Finance, LLC. It was further part of the scheme that the Defendant falsely and fraudulently represented on the PPP loan application for Commercial Capital Finance, LLC, that the company had six employees, when in truth and fact, the company had no employees other than Defendant Williams.

5

Defendant Williams falsely represented in the PPP loan application for Commercial Capital Finance, LLC, that the average monthly payroll for the six fictitious employees was $14,500. It was further part of the scheme that by listing employees on his PPP loan applications who were not, in fact, employed by Commercial Capital Finance, LLC, Defendant Williams falsely and fraudulently inflated the amount of PPP loan money to which he was entitled on behalf of his business. It was further part of the scheme that but for Defendant Williams's misrepresentations regarding the number of employees employed by Commercial Capital Finance, LLC, and the average monthly payroll of the business, Midwest Regional Bank would not have issued PPP loan funds to Defendant Williams. On June 3, 2020, $35,700 in loan funds for application #18005609 for Commercial Capital Finance, LLC were wired from Midwest Regional Bank to an account controlled by defendant.

It was part of the scheme to defraud that Defendant Williams both directly applied for and assisted other individuals and their associated entities in applying for PPP loan funds in applications containing material misrepresentations as to the number of employees of and the average amount of monthly payroll paid by the applicant entities. Defendant Williams was responsible for causing the disbursement of over $1,500,000 in fraudulently obtained PPP funds. Defendant Williams applied and caused others to apply for PPP loans through JPRHC with the intent to obtain PPP loan proceeds, which were issued by PNC Bank. Defendant Williams submitted fraudulent supporting documentation with the PPP loan applications. Defendant Williams received funds from many of the entities that were provided with PPP loans, even though Defendant Williams had no employment relationship with the entities themselves. It was further part of the scheme to defraud that in some instances, PPP loan applicants paid Defendant Williams

6

a fee in connection with the application. In some instances, loan recipients compensated Defendant Williams using the funds received from PPP loans.

Defendant Williams caused the submission of PPP loan applications to JPHRC for the following entities: 2543 N. Grand, LLC, Afshari Enterprise, LLC, Club TV One, LLC, Emergency Funding, LLC, International Product Groups, Inc., Julia's Enterprize, LLC, Tasty Brands Enterprize, LLC, and Snappy's International Holdings, LLC. Defendant Williams caused the submission of loan applications reflecting material false and fraudulent representations as to both the number of employees and the average monthly payroll paid by the applicant companies. By listing employees on the PPP loan applications who were not, in fact, employed by 2543 N. Grand, LLC, A Fresh Start & Associates, LLC, Afshari Enterprise, LLC, Club TV One, LLC, Emergency Funding, LLC, International Product Groups, Inc., Julia's Enterprize, LLC, or Snappy's International Holdings, LLC, this falsely and fraudulently inflated the amount of PPP loan money to which the companies were entitled.

But for the misrepresentations regarding the number of employees employed by 2543 N. Grand, LLC, A Fresh Start & Associates, LLC, Afshari Enterprise, LLC, Club TV One, LLC, Emergency Funding, LLC, International Product Groups, Inc., Julia's Enterprize, LLC, and Snappy's International Holdings, LLC, and the average monthly payroll of each business, PNC Bank would not have issued PPP loan funds.

On or about the dates set forth below, in the Eastern District of Missouri, the defendant, having devised and intended to devise a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication

7

in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count: the defendant Robert Williams, executed and attempted to execute the scheme and artifice set forth above, to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of Midwest Regional Bank and PNC Bank, which were financial institutions as defined in Title 18, United States Code, Section 20, by means of material false and fraudulent pretenses, representations, and promises, in that Defendant Williams submitted and caused to be submitted false and fraudulent PPP loan applications for the purpose of obtaining money, funds, credits, assets, securities, and other property owned by, and under the custody and control of the financial institutions, as described below for each count, each submission constituting a separate count:

| COUNT | DATE | LOAN APPLICATION | AMOUNT |
|---|---|---|---|
| I | June 3, 2020 | Loan proceeds for application #18005609 for Commercial Capital Finance, LLC wired from Midwest Regional Bank | $35,700.00 |
| II | August 18, 2020 | Loan proceeds wired from PNC Bank account #xxxxxxxxxxx0096 to 2543 N. Grand, LLC First Community Credit Union account #xxxxxxxx8908 | $130,000.00 |
| III | August 5, 2020 | Loan proceeds wired from PNC Bank account #xxxxxxxxxxx0096 to Tasty Brands Enterprise, LLC First Community Credit Union account #xxxxxxxx4415 | $186,000.00 |
| IV | August 14, 2020 | Loan proceeds wired from PNC Bank account #xxxxxxxxxxx0096 to Afshari Enterprise, LLC First Community Credit Union account #xxxxxxxx7214 | $250,000.00 |
| V | August 11, 2020 | Loan proceeds wired from PNC Bank account #xxxxxxxxxxx0096 | $250,000.00 |

8

|     |              | to Club TV One, LLC First Community Credit Union account #xxxxxxxx6069 |             |
| --- | ------------ | --------------------------------------------------------------------- | ----------- |
| VI  | July 7, 2020 | Loan proceeds wired from PNC account #xxxxxxxxxxx3761 to Emergency Funding, LLC First Community Credit Union account #xxxxxxxx0642 | $35,791.87 |
| VII | July 7, 2020 | Loan proceeds wired from PNC Bank account #xxxxxxxxxxx3761 to Snappy's International Holdings, LLC First Community Credit Union account #xxxxxxxx1705 | $90,000.00 |

It was a further part of the scheme that once defendant obtained the proceeds of the loans issued, he knowingly spent those proceeds on numerous items that he knew were not authorized under the PPP. Among other things, defendant knowingly used proceeds from the PPP loans for all of the following unauthorized expenses:

    a. the purchase of vehicles

    b. to pay for a variety of defendant's personal day-to-day living expenses

Regarding relevant conduct, defendant also admits that he acted as a "broker" to several additional entities that applied for and received PPP loans due to fraudulent applications that were submitted after being prepared by defendant. Defendant received a fee for originating the application and submitting the application on behalf of these additional entities.

The total loss involved in the case is over $1.5 million dollars.

## 5. STATUTORY PENALTIES:

As to Counts I-VII, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not

9

more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

(1) **Base Offense Level:** As to Count I, the parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply as to Count I:

The parties agree that 16 levels should be added pursuant to Section 2B1.1(b)(1)(I) because the loss exceeds $1,500,000 million dollars.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(12) because the offense involved funds from emergency benefits.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(10) because defendant utilized sophisticated means.

### b. Chapter 3 Adjustments:

(1) **Acceptance of Responsibility:** The parties agree that two levels should be deducted pursuant to Section 3E1.1(a) and, if the total offense level is 16 or more, then one additional point pursuant to (b), because the defendant has clearly demonstrated acceptance of

10

responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 24.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

11

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

12

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $700, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

13

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the information. The defendant agrees to the entry of an order of restitution in the following amount, which reflects the amount of the loans the proceeds from which the defendant was directly personally compensated: $1,231,491.87.

g. **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

14

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following:

Specific property subject to forfeiture includes, but is not limited to, the following:

a.   $2,935.23 from First Community Credit Union account ending in #1705 held in the name of Snappy's International Holdings LLC

b.   $23,179.77 from First Community Credit Union account ending in #6069 held in the name of Club TV One LLC

c.   $103,243.53 from First Community Credit Union account ending in #7214 held in the name of Afshari Enterprises LLC

d.   $210,020.00 from First Community Credit Union account ending in #5062 held in the name of International Products Group

e.   $11,323.64 from First Community Credit Union account ending in #4415 held in the name of Tasty Brands Enterprize LLC

f.   $127.84 from United Missouri Bank account ending in #8055 held in the name of Phillip Lee Williams & Pamela Kay Williams

g.   $15,254.42 from FIRST COMMUNITY CREDIT UNION account ending in #7202 held in the name of Julia's Enterprize

h.   2017 Jaguar, F-Pace, VIN: SADCL2BV8HA893179

i.   $100,000.00 in earnest money received from Continental Title

j.   2017 MASERATI LEVANTE - WAGON 4 DOOR, VIN: ZN661XUA9HX257839

The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the

15

government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

16

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

17

## 11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12.  NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

12-13-21
Date

EDWARD L. DOWD III
Assistant United States Attorney

12-13-21
Date

ROBERT WILLIAMS
Defendant

12/13/21
Date

JOEL SCHWARTZ
Attorney for Defendant

18